**CURTIS et al. v. AYCOCK et al.**

No. 2577.

Court of Civil Appeals of Texas. Waco.

April 6, 1944.

Rehearing Denied May 4, 1944.

J. C. Lumpkins and J. L. Gammon, both of Waxahachie, for appellants.

James F. Gray, of Dallas, for appellees.

HALE, Justice.

This litigation directly involves three wills, two separate tracts of land consisting of 50 acres and 121 acres, respectively, a written partition and settlement agreement and certain deeds executed in pursuance thereof. Contested applications for the probate of the three wills were consolidated in the County Court of Ellis County and after trial there they were removed by appeal into the District Court where they were consolidated with another suit instituted in that court for the purpose of testing the title to the two tracts of land and the validity of the deeds executed under the settlement agreement. The consolidated cases were tried in the District Court without a jury and resulted in a judgment from which all parties have appealed to this court. An extended statement is necessary to an understanding of the intricate issues involved.

Ed F. Aycock was married to Maude Curtis in 1902. For many years after their marriage they lived in the home of Mrs. Theresa Curtis, who was the mother of Mrs. Aycock. The only child of their marriage was a son, Jerome E. Aycock, who was born on December 23, 1913, and who after the death of his father became known as Ed F. Aycock, Jr. On November 8, 1922, Ed F. Aycock and his wife, Maude, jointly signed and published an instrument as their last will in the presence of subscribing witnesses. A proper construction of the contractual obligations, if any, imposed by the terms of this will in the light of subsequent events is of controlling importance.

In the caption of this will the testators recited that they desired "to make disposition of our property in the event of the death of either of us * . * *." In the first numbered paragraph thereof they directed that in the event of the death of either, all just debts of both be paid out of the estate of such decedent. After reciting in the second numbered paragraph that all property owned by them is community property the will reads: "* * * and we each hereby give, devise and bequeath, to the one of us who shall survive the other a one-half of all the property, real, personal and mixed of which the one of us who shall die first shall be seized and possessed at the time of his or her death, to be held by the survivor, absolutely and in fee simple, that is to say that I the said Ed F. Aycock do hereby give and devise and bequeath to my beloved wife Maude Aycock, in case she shall survive me, one-half of all my property, real, personal and mixed, of every kind and character, wheresoever situated of which I may die seized and possessed, to be held and owned by the said Maude Aycock absolutely as in fee simple. All the rest and residue of my property, the same being a one-half, real personal and mixed, wheresoever situated, of which I may die seized

and possessed, I give and devise and bequeath to my beloved son Jerome E. Aycock in the following manner, and upon the following terms, conditions and subject to the following qualifications and limitations, to-wit: * * *."

By the terms of the testamentary trust here created for the benefit of the son it was provided that neither the title nor possession of any property therein devised shall vest in the son until he shall arrive at the age of 30 years; if the son should die before arriving at the age of 30 years, then the property bequeathed to him shall vest in fee simple in the wife; if the son, after arriving at the age of 21 years, should attempt to sell, mortgage or encumber the property or the rents or revenues arising therefrom before he arrives at the age of 30 years, then all of the property bequeated to the son shall immediately vest in the wife in fee simple; that neither the property bequeathed to the son nor any interest therein shall be subject to execution, attachment or any other writ or process, for any debt or obligation that the son may owe until he shall arrive at the age of 30 years; that the wife shall have full and absolute control, management, direction and disposition of said property until the son shall arrive at the age of 30 years, with full power and authority to sell, transfer, convey, mortgage or encumber the same for such purposes as she may deem advisable, and to use so much of the rents and revenues arising therefrom as she may deem necessary for the education, maintenance and support of the son during his minority and thereafter to turn over to him such amount of the rents and revenues arising therefrom as she may deem necessary, wise or expedient, "it being my intention herein to give my said wife absolute and unconditional control of all of said property until my said son arrives at the age of thirty years."

Immediately after the devise and bequest by Ed F. Aycock to his wife and son upon the terms and conditions above set forth and as a part of the same numbered paragraph in the will, Maude Aycock devised and bequeathed to her husband in case he should survive her one-half of all her property to be held and owned by him absolutely as in fee simple and the other one-half she bequeathed to her son subject to the terms of the trust which she imposed upon her husband for the benefit of the son, using the same identical words theretofore employed by her husband in disposing of his one-half interest in their community property.

In the third numbered paragraph of this will the makers thereof directed that "if both of us should die before the said Jerome E. Aycock should reach the age of thirty years, then in that event all our said property shall immediately descend and vest in our said son, Jerome E. Aycock, in fee simple." In the fourth paragraph they nominated the survivor as independent executor or executrix without bond and directed that no other action be taken in the probate court than to prove and record the will and return an inventory and appraisement.

Ed F. Aycock died on December 11, 1922, whereupon his surviving widow caused the foregoing instrument to be admitted to probate as his last will and immediately thereafter she took charge of all the community property formerly belonging to herself and her deceased husband, managed and controlled the same and collected all rents and revenues therefrom up until the time of her settlement agreement with their son.

On August 4, 1924, Maude Aycock executed a second will under due formalities by the terms of which (1) she expressly revoked all other wills and codicils theretofore made by her; (2) she bequeathed $50 per month to her mother, Theresa Curtis, so long as she might live or $100 per month if the latter should become an invalid; (3) she requested that her home be used and occupied by her mother and son so long as the mother might live; (4) she devised and bequeathed all of the remainder of her estate without condition or limitation to her son; and (5) she appointed Byron Lewis as executor of the will.

On December 26, 1941, Maude Aycock wrote a third will wholly in her own handwriting by the terms of which (1) she gave to her brother, Jerome A. Curtis, the 121 acres and the 50 acres above referred to with the request that he take care of her mother with the rents derived therefrom; (2) she gave to her mother "any of my personal things that she may care for;" and (3) all of the remainder of her property she gave to her son with the request

that he not mortgage any of the land but keep it free as a means of livelihood.

The homestead in the town of Midlothian, the 121 acre tract, two other tracts aggregating 260 acres, and a 584 acre tract situated in Bell County constituted community property belonging to Mrs. Aycock and her husband at the time of the latter's death in 1922. Mrs. Aycock acquired the 50 acre tract by deed from Joe Baggett under date of October 12, 1927, and she likewise acquired a 684 acre tract in Ellis County by deed from W. D. Thompson and others under date of June 26, 1941, with funds accruing to her from the rents and revenues derived from the original community property.

On January 17, 1942, Mrs. Aycock and her son entered into a formal written contract by the terms of which they undertook to make a complete partition of their property rights and a settlement of all claims arising out of the holding of said properties, the handling and collecting of rents therefrom and of all claims asserted and that might thereafter be asserted by the son. Under the provisions of this partition and settlement agreement and as a part thereof Mrs. Aycock conveyed to her son with covenants of general warranty the 584 acre tract situated in Bell County and the 684 acre tract situated in Ellis County and in consideration thereof the son likewise conveyed to his mother with covenants of general warranty the homestead in Midlothian, the 121 acre tract, two other tracts aggregating 260 acres and any interest he might have in the 50 acre tract acquired from Joe Baggett.

On February 14, 1942, Mrs. Aycock executed two separate deeds by the terms of which she conveyed to her brother, Jerome A. Curtis, with covenants of general warranty the 50 acre tract and the 121 acre tract. She did not receive any consideration for the execution of either of these deeds and she did not deliver them to her brother but placed them in the possession of her mother with instructions that they be delivered after her death. Mrs. Aycock died on September 2, 1942, and these deeds were then placed of record.

The trial court found and concluded among other things that the first will was the joint, mutual, reciprocal and agreed will of Mr. and Mrs. Aycock and that the

surviving widow, after the death of her husband, held all of their community property in an active and irrevocable trust so long as their son was under the age of 30 years; that the 50 acre tract constituted the separate property of Mrs. Aycock because it was acquired by her after the death of her husband and hence was not a part of the trust property; that her third will was executed the day before her son married contrary to her wishes and a day or so thereafter she made an unsuccessful attempt to take her life and after three attempts at suicide she finally succeeded; and that the settlement agreement of January 17, 1942, and the deeds giving effect thereto were invalid because the son was then under 30 years of age. The court rendered judgment: (1) granting the joint application of Ed F. Aycock, Jr., and Byron Lewis to admit the first will dated November 8, 1922, and the application of Jerome A. Curtis and his mother to admit the last will dated December 26, 1941 (insofar as the latter was not inconsistent with the terms and provisions of the former), as the last will of Maude Aycock; (2) denying the application of Ed F. Aycock, Jr., and Byron Lewis to probate the second will dated August 4, 1924; (3) vesting in Ed F. Aycock, Jr., title and the right of possession in and to the 121 acre tract and cancelling the deed from Maude Aycock to her brother dated February 14, 1942, purporting to convey to him the same land; (4) vesting in Jerome A. Curtis the title and right of possession in and to the 50 acre tract; and (5) prorating the court costs among the several litigants.

## Opinion

Ed F. Aycock, Jr., contends that all of the community property belonging to his father and mother at the time of the former's death was held by his mother in an irrevocable trust at all times after she accepted the benefits accruing to her under the will of her husband; and since the 50 acre tract was acquired by her with funds arising from the rents and revenues derived from the trust property, and since the settlement agreement and the deeds executed in pursuance thereof were invalid and void because contrary to the provisions of the trust agreement, the court erred in admitting the third will to probate for any

purpose and in awarding the 50 acre tract to Jerome A. Curtis. On the other hand, Jerome A. Curtis and his mother contend that the first will was the separate and individual will of each of the makers thereof and was intended to dispose of the property of each as such; that under the terms thereof Mrs. Aycock acquired a one-fourth interest in the entire community estate and thereafter she held a three-fourths interest in the community in fee simple and was at liberty to revoke her part of the will at any time and to make disposition of her property in any manner she might see fit; and that the settlement agreement and the deeds giving effect thereto were valid and enforceable, in any event as the assignment of a contingent interest to be enforced as a present contract upon the happening of such contingency. Therefore, they say the court erred in admitting the first will to probate for any purpose and in awarding the 121 acre tract to Ed F. Aycock, Jr.

We agree with the contention of all parties to the appeal insofar as each insists that the judgment of the trial court is erroneous and should be in part reversed and rendered. Under the pleadings, undisputed evidence and stipulations it is clear to us that the court erred in admitting the two separate instruments dated November 8, 1922, and December 26, 1941, respectively, as the last will of Maude Aycock and in awarding the 50 acre tract to one of the claimants and the 121 acre tract to the other. As we view the record only one of the three instruments in evidence should have been admitted to probate as the last will of Maude Aycock and both tracts of land in controversy should have been awarded to one or the other of the two adverse claimants thereto. The more difficult problem is to determine the party to whom both tracts should have been awarded.

It appears to be well settled in this state that where a husband and wife make a joint will pursuant to a contract between them, by which each devises to the other a life estate in their common property with remainder to their child or children, the survivor becomes irrevocably bound thereby if he or she accepts benefits accruing under such contract and will. Larrabee v. Porter, Tex.Civ.App., 166 S.

W. 395, error refused; Moore v. Moore, Tex.Civ.App., 198 S.W. 659, error refused; Heller v. Heller, Tex.Civ.App., 233 S.W. 870; Howard v. Combs, Tex.Civ.App., 113 S.W.2d 221; Johnson v. Durst, Tex.Civ. App., 115 S.W.2d 1000, error dismissed; French v. French, Tex.Civ.App., 148 S.W. 2d 930, error dismissed; McWhorter v. Humphreys, Tex.Civ.App., 161 S.W.2d 304, error refused. The rule is grounded upon the sound principle that when the first to die has completely performed his or her part of the executory agreement, whether evidenced by a pre-existing contract to sign the joint will or by the terms of the will itself, the survivor who accepts benefits thereunder should not later be permitted to repudiate the unfavorable provisions of such agreement or will. Sherman v. Goodson's Heirs, Tex.Civ.App., 219 S.W. 839, error refused. But it does not follow merely because a husband and wife jointly sign a will, even though the terms and provisions thereof be mutual and reciprocal, that the same is necessarily contractual in nature or is made in pursuance of a contract between them or that all of the devises therein contained become irrevocable. 44 T.J. pp. 665–670, and authorities; Wagnon v. Wagnon, Tex.Civ. App., 16 S.W.2d 366, error refused; Aniol v. Aniol, Tex.Civ.App., 62 S.W.2d 668; Id., 127 Tex. 576, 94 S.W.2d 425; Wallace v. Peoples, Tex.Civ.App., 89 S.W.2d 1030; Winston v. Griffith, 133 Tex. 348, 128 S.W. 2d 25; Garland v. Meyer, Tex.Civ.App., 169 S.W.2d 531. Hence, in order to properly dispose of this appeal, we must determine whether the will of November 8, 1922, was contractual in its nature or was made pursuant to a contract between Ed F. Aycock and his wife, and if so, then we must determine what were the mutual and reciprocal obligations contained in such will or contract, so that the same may be given due force and effect.

Moreover, in passing upon these questions, it is our duty to consider the will from its four corners in order to determine its true intent and meaning. As said in the case of Aron v. Aron, Tex.Civ. App., 168 S.W.2d 917, 918, error refused: "In construing a will the intention of the testator is controlling. It is the duty of the court, in arriving at such intention, to look alone to the language actually used and to give effect to every part of the will, if it is legally possible or practical to do

so, and to consider the instrument as a whole in keeping with the general intention of the testator and to bring every provision of the will into harmony with the other provisions thereof. It is to be presumed that the testator in writing his will did not intend to use meaningless or superfluous words, but that he used each word and term advisedly and that he intended that every provision, clause, or word used, should have a meaning in the disposition of his property. If there is no ambiguity in the will, it must be construed according to its legal import. Henderson v. Stanley, Tex.Civ.App., 150 S.W.2d 152, 154." See also: Haupt v. Michaelis, Tex.Com.App., 231 S.W. 706; Estes v. Estes, Tex.Com. App., 267 S.W. 709; Arrington v. Mc-Daniel, Tex.Com.App., 14 S.W.2d 1009; Jackson v. Templin, Tex.Com.App., 66 S. W.2d 666, 92 A.L.R. 873.

We do not think the will dated November 8, 1922, discloses on its face an enforceable contract between the makers thereof insofar as the devises therein contained are concerned. It rather appears from the will as a whole that it was the intention of each of its makers to thereby devise to the survivor an undivided one-fourth interest in the entire community property absolutely and to devise to the son the other undivided one-fourth interest of the testator upon the conditions set forth in the testamentary trust created for his benefit. Having gone into possession of the entire property, Mrs. Aycock thereby became bound as trustee with respect to the handling and disposition of the one-fourth interest devised to the son, but, in our opinion, she did not thereby acquire or hold all of the community property formerly belonging to herself and her deceased husband in an irrevocable trust, for several reasons.

By the first devise contained in the will, each maker disposed of his or her one-fourth of the community to the survivor absolutely and in fee simple by the use of language so plain that it leaves no room whatsoever for doubt as to its meaning. No disposition was made or attempted to be made of the estate of the survivor, as each devised to the other only in case of survival. The later provisions contained in the third numbered paragraph of the will should not be construed to be in conflict with the provisions contained in the second numbered paragraph, unless such construction is clearly required by the words actually used. Thomson v. Schryver, Tex.Civ.App., 159 S.W.2d 955. The provisions contained in the third paragraph, when construed in accordance with the legal significance of the words therein employed, were susceptible of meaning and did mean, we think, that if both of the makers should die before the son should reach the age of 30 years, the trust created for his benefit upon the death of the first to die should then terminate, the one-fourth interest so held in trust for the son should thereupon vest in him absolutely, and if the survivor had not made other disposition of his or her three-fourths so held absolutely and in fee simple, then such three-fourths interest should also descend to and vest in the son according to the laws of descent and distribution. We believe such meaning is entirely consistent with all the other provisions in the will.

If it be assumed, however, that such will is contractual in nature or was made in pursuance of a pre-existing agreement, then what were the mutual or reciprocal obligations of the will or contract? For an answer to this question we must look alone to the will because no extraneous evidence was offered which tended to show any terms or provisions different from or in addition to those embraced in the will itself. We think the most that can be said in this connection is that Mrs. Aycock agreed with her husband to devise one-half of her property in fee simple to him and the other one-half of her property upon conditions of trust for the benefit of the son in the event they should both survive her, if the husband would make a similar will to her and the son upon the same conditions; and in the event she should survive her husband she would accept and attempt to faithfully execute the testamentary trust thereby imposed upon her. Mrs. Aycock has complied with her part of that agreement, if any such she made, because the value of the property which the son has received under the settlement agreement and that which he will receive under the terms of his mother's last will far exceeds the value of the one-fourth interest which was devised to him in trust under his father's will. If it had been the intention or desire of either of the testators to place all of the property of both in a spendthrift trust for the benefit of the son they could have done so because

it appears that they or their advisors who prepared the will well knew how to draw such testamentary trust.

 We also think the trial court erred in concluding that the partition and settlement agreement between Mrs. Aycock and her son dated January 17, 1942, was invalid and of no binding force or effect on the parties thereto. Unless this contract was in violation of some principle of law or was against public policy it should be upheld. Fore v. McFadden, Tex.Civ.App., 276 S.W. 327, error dismissed. Even though the will should be construed as contractual in its nature, intended to operate as an instrument by which the son was ultimately to receive all of the common property of both parents, only one-fourth of the entire community property could ever in any event be subject to the terms of the spendthrift trust and we know of no reason why the son could not alienate his expectancy in the remaining three-fourths of the entire community property by a valid contract with respect thereto, if the same was fairly made in good faith by the contracting parties. Nimmo v. Davis, 7 Tex. 26; Hale v. Hollon, 14 Tex.Civ.App. 96, 35 S.W. 843; Id., 90 Tex. 427, 39 S.W. 287, 36 L.R.A. 75, 59 Am.St.Rep. 819; Nunn v. Titche-Goettinger Co., Tex.Com.App., 245 S.W. 421; Gottwald v. Warlick, Tex.Civ.App., 125 S.W.2d 1060; Holley v. Mucher, Tex.Civ.App., 165 S.W.2d 1015, error refused. We find nothing to indicate that Mrs. Aycock acted in bad faith or that the settlement agreement with her son was not fairly made for his exclusive benefit.

Finally, and in all events, since the son conveyed to his mother the property in controversy with covenants of general warranty in consideration of which he accepted and retained the benefits accruing to him under the terms of the partition and settlement agreement until after the death of his mother, we hold that the son is now in no position to question the validity of his own agreement or of the deeds executed by himself and his mother in pursuance thereof and consequently he is bound thereby. 21 C.J. p. 1067, § 26; 31 C.J.S., Estoppel, § 10; 14 Am.Jur. p. 521, § 51; 19 Am.Jur. p. 619, § 91; Miller v. Miller, Tex.Civ.App., 283 S.W. 1085, error dismissed; Wilson v. Beck, Tex.Civ.App., 286 S.W. 315, error refused; Hanks v. Magnolia Petroleum Co., Tex.Civ.App.,

14 S.W.2d 348; Id., Tex.Com.App., 24 S.W.2d 5; Hamilton v. Keller, Tex.Civ.App., 148 S.W.2d 1011.

It follows from what we have said that in our opinion the trial court should have awarded both tracts of land in controversy to Jerome A. Curtis. Accordingly, those parts of the judgment denying the application to probate the second will, granting the application to probate the third will and vesting in Jerome A. Curtis the title and right of possession in and to the 50 acre tract, are affirmed; and the remaining parts of the judgment are reversed and in lieu thereof judgment is here rendered denying the application to probate the first will, vesting in Jerome A. Curtis the title and right of possession in and to the 121 acre tract and taxing all costs in the trial court and in this court against Ed F. Aycock, Jr.