Mary M. LEE et al., Appellants,

v.

Sam J. POWELL et al., Appellees.

No. 3321.

Court of Civil Appeals of Texas.

Waco.

Dec. 15, 1955.

Rehearing Denied Jan. 5, 1956.

Brown & Dickie, Gatesville, Klett, Bean & Evans, Lubbock, Theodore V. Foote, Gatesville, Zue Vance, Azle, for appellant.

Taylor & Dickens, Marlin, T. R. Mears, Gatesville, Abner V. McCall, Waco, for appellee.

TIREY, Justice.

Plaintiffs brought this suit for the partition of property between the heirs of John M. Powell, deceased, and the heirs of Blanche Powell, deceased, and grounded their action on the disposition of the property of said decedents under the joint will executed by decedents under date of February 6, 1917. Some of the heirs of Blanche Powell sought to have the trial court hold that the will of decedents dated February 6, 1917 was a joint, mutual and contractual will, and that by reason thereof such will created a resulting trust for the heirs of decedent Blanche Powell as of the date of the death of her husband John M. Powell. The action sought to nullify the disposition of the property made by decedent Blanche Powell in her last will and testament dated September 4, 1953, which will had been duly admitted to probate, said probate proceeding having become final in an appeal to the District Court of Coryell County. The court, on motion of the devisees and beneficiaries under the last will and testament of Blanche Powell, dated September 4, 1953, severed the issue of whether the will of February 6, 1917 was a contractual will from the issue of partition of the property in question (no complaint to this ruling), so the major question before this court is whether or not the joint will of decedents dated February 6, 1917 was contractual. At the conclusion of the evidence the court overruled all motions for instructed verdict and submitted two issues to the jury:

1. "Do you find from a preponderance of the evidence, if any, that on or before the 6th day of February, 1917, John M. Powell and his wife, Blanche Powell, agreed and contracted, each with the other, to make testamentary

disposition of all their property, real, personal, and mixed, by each devising to the other an estate in all said property during and for the term of the natural life of the survivor, with the right in the survivor to the use and benefit of the interest, rents, dividends, and revenues yielded by the property, and upon the death of John M. Powell and Blanche Powell the property of John M. Powell to pass to his kindred by blood, and the property belonging to the estate of Blanche Powell to pass to her kindred by blood?" to which the jury answered "No."

The court instructed the jury to the effect that if they answered the foregoing issue "Yes," then they would answer the following issue, otherwise they need not answer it:

2. "Do you find from a preponderance of the evidence, if any, that John M. Powell and wife, Blanche Powell, executed the will dated February 6, 1917 in accordance with such agreement and contract, if any, you have found?"

Pursuant to the instructions, the jury did not answer Issue No. 2.

The court overruled plaintiffs' motion for judgment non obstante veredicto and granted defendants' motion for judgment on the verdict. In the decree we find this recital:

" * * * and it is the opinion of the court that said motion should be granted and that cross plaintiffs and defendants are not entitled to recover anything herein, and that judgment should be entered denying all affirmative relief prayed for by cross plaintiffs and defendants,"

and then decreed that the plaintiffs and defendants, naming them, take nothing by this suit, and the further recital, "that the will of John M. Powell and Blanche Powell dated February 6, 1917, is declared to be non-contractual; and, that the will of Blanche Powell dated September 4, 1953

is a valid and enforceable, will, and that the devisees and beneficiaries thereunder are entitled to have and receive the properties given them by said will," and decreed accordingly. Plaintiffs and cross defendants seasonably perfected their appeal.

The judgment is assailed on what appellants designate as six points. Points 1, 2 and 3 are to the effect that the will of decedents dated February 6, 1917 conclusively shows on its face that it was joint, mutual, and contractual, and that by reason thereof there was no issue to submit to the jury, and that the court should have granted their motion for peremptory instruction, as well as their motion for judgment non obstante veredicto. Point 4 is to the effect that the court erred in admitting the testimony of witness Ray Byrom and Othar Johnson to the effect that Blanche Powell stated to them that when she executed the will of September 4, 1953, that she and her husband had an agreement that they could execute another will and dispose of their property however they saw fit, in that such evidence was an attempt to vary the terms and meaning of a written instrument by parol evidence. The 5th point complains of the court's failure to submit the requested instructions to the jury as to the meaning of a joint will, as follows:

"You are instructed that a 'joint' will is defined as a single testamentary instrument which contains the wills of two or more persons, is executed jointly by them and disposes of property owned jointly, in common, or separately, and a 'mutual' will is defined as a will executed in pursuance to an agreement between two or more parties to dispose of their property in a particular manner, each in consideration of the other."

The 6th point complains of the failure of the court to sustain objections Nos. 1 and 2 to the court's charge:

"1. The court has failed to use the word joint and mutual will in the special issue submitted to the jury in Special Issue No. 2 and we herewith submit Special Issue No. 1 requested by

the above named parties in lieu of Special Issue No. 2 submitted by the court. Said court erred in failing to include the words 'joint' and 'mutual' in the submission in Special Issue No. 2, and in failing to give the requested Special Issue No. 1 in lieu thereof for the reason that said Special Issue is raised by the pleadings and the evidence introduced before the court and jury.

"2. We object and except to the charge of the court for the reason that the court fails and refuses to instruct the jury as to the definition of a joint and a mutual will and we submit herewith a special instruction as to the definition of a joint and a mutual will. Said court erred in failing to instruct the jury as requested as to the definitions of a joint will and a mutual will for the reason that said special instruction is necessary in order that the jury answer Special Issue No. 1 as requested."

Appellees' counter points are to the effect (1) that the court properly refused appellants' motion to instruct the jury to the effect that the 1917 will was executed by the Powells in fulfillment of a contract between them because there was evidence to the contrary; (2 and 3) the court properly submitted to the jury the fact issue of whether the 1917 will of the Powells was executed in fulfillment of a contract between them because both the will and the extrinsic evidence showed that there was no contract and it was the duty of the court to render judgment on the finding of the jury; (4) there was no error in admitting the evidence of Ray Byrom and Othar Johnson as to the understanding existing between the Powells as to their 1917 will because such evidence does not violate the parol evidence rule; (5) there was no error in refusing to submit appellants' requested instruction to the jury defining joint will and a mutual will because such instruction was unnecessary, confusing and erroneous and was a comment upon the weight of the evidence; (6) the court did not err in overruling appellants' objection to Issue 2 to the effect that such issue should contain the term "joint and mutual will" as defined in the requested instruction because such inclusion would have made the special issue confusing and was an erroneous declaration of the law and was a comment on the weight of the evidence.

Testimony was tendered to the effect that the Powells were middle-aged at the time they executed the will in 1917 and that their only child born to them, a son, had died in 1916. Owing to the fact that the determination of this action turns on the question as to whether the will of 1917 was contractual, we quote the will in full, save and except the formal parts:

"That we, John M. Powell and wife Blanche Powell of the County of Coryell and State of Texas, each being of sound and disposing mind and memory and desirous of directing the disposition of our property, do make, ordain and publish this our mutual joint Will and Testament, hereby revoking all former wills or codicils thereto, heretofore by us or either of us made.

"First: We do here now declare that we each own separate property in the separate right of each of us, and that we also own community property.

"Second: It is our joint and mutual Will that upon the death of one of us, the survivor, as hereinafter directed, shall as soon as practicable, pay all and every the indebtedness which may exist against the estate of the decedent.

"Third: It is our further mutual Will that the survivor of one of us shall have the use of, during and for the term of the natural life of such survivor, all and every the property of the decedent, real, personal and mixed, wheresoever the same may be situated. Such survivor shall have the right and power to use the property so bequeathed by this clause, during the term of the natural life of the survivor, and to appropriate to the use, benefit and behoof of such sur-

vivor, the interest, rents, dividends and revenues yielded by the property of the decedent. Such survivor shall have the right, within the judgment of such survivor, to sell any of the property coming to him or her from such decedent, for the purposes of reinvestment, either in other property of a like kind, or in any other form of security which may be deemed proper by such survivor, so that the survivor shall, so far as is possible, taking into consideration the subsequent paragraphs of this Will, keep the principal of the estate so received from the decedent in tact. Any purchaser at any sale made by the survivor under this clause of this Will, shall not be required to look further than to the recitals in the deed of conveyance and shall not be required to see to the application of the proceeds of sale, as directed in this paragraph.

"Fourth: Such survivor is hereby authorized and empowered, in the event it should become necessary for the proper support and maintenance of such survivor, to sell any of the principal of the estate received from the decedent hereunder, and appropriate the proceeds thereof, or so much as may be necessary, to the support and maintenance of such survivor.

"Fifth: It is our further joint Will and Testament that upon the death of both of us, that then and in that event, we hereby bequeath the property owned by us and belonging to each of us and to which each of us holds title as follows, to-wit: The property on hand at the date of the death of the survivor of us and which belongs to the estate of John M. Powell is hereby willed and bequeathed to the kindred by blood of the said John M. Powell, to pass to such kindred by blood, according to the laws of descent and distribution of the State of Texas, and the property belonging to the estate of the said Blanche Powell is hereby willed to and bequeathed to the kindred by blood of the said Blanche Powell, to

pass to such kindred by blood according to the laws of descent and distribution of the State of Texas.

"Sixth: We do hereby name, constitute and appoint the survivor of one of us as executor of this Will and direct that no bond be required of such survivor and that no further proceedings be had in the courts relative to the estate of the first decedent than the probate of this Will and the return of an inventory and appraisement of said estate.

"Seven: Upon the death of both of us we hereby name, constitute and appoint ———— as executor of this Will, and direct that no bond be required of such and that no further proceedings be had in the courts than the probate of this Will as to such last decedent and return of an inventory and appraisement of the whole estate then existing. And we do further direct that in the event the party appointed herein as executor under this Will is not living at the date of the death of the survivor of one of us, or does not qualify as such executor, then we direct that the County Court of Coryell County, Texas, or the county in which said Will shall be probated, appoint by an order upon the Minutes of said court, an executor or executors of this Will, who shall be competent business men and mutual friends of both of us, who, when so appointed, shall be authorized to act hereunder as though originally named herein.

"In testimony whereof we have each subscribed our names hereto in the presence of each other and in the presence of J. P. Kendrick and J. S. Powell, each of whom, in the presence of each of us and in the presence of each other, have subscribed their names hereunto at our request as witnesses hereto and to whom we have declared this to be our last mutual, joint Will and Testament."

It is the position of the appellants that the will is contractual and that it conclu-

sively shows by its terms that it was executed pursuant to a compact between the testator and the testatrix. They so alleged and also tendered extrinsic evidence tending to sustain their view. It is the position of the appellees that the will was not contractual and not executed pursuant to a compact between testator and testatrix and tendered extrinsic evidence tending to sustain their view. We think the factual situation here presented is controlled by the rule announced in Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395 (writ ref.); Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 169 A.L.R. 1; Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876; Curtis v. Aycock, Tex.Civ.App., 179 S.W.2d 843 (n. r. e.), and the cases cited in the foregoing opinions.

■ Our Supreme Court in Nye v. Bradford, supra, announced two general rules that we think are applicable and controlling here. In Points 4–5 of the opinion [144 Tex. 618, 193 S.W.2d 167] we find this statement of the rule:

"One who relies upon a will as a contract has the burden of proving that the will is contractual as well as testamentary in character. Proof may be made by the provisions of the will itself or by competent witnesses who testify to the agreement; and evidence as to declarations of the promisor, relations or conduct of the parties and other facts and circumstances, that tend to prove that an agreement was made, are admissible. [Citing long list of cases.]"

■ The second one is found in Point 6 of the opinion where it states:

"It is held that the mere making of a joint will does not of itself prove that it was made pursuant to contract. [Citing cases.] The will may, by its terms or in its recitals, conclusively prove or tend to prove that it is based on or executed in furtherance of agreement. [Citing cases.]"

The first question that we must consider is: Does the 1917 will, by its terms or in its recitals, conclusively prove that it is based on or executed in furtherance of an agreement? We think it does not. But if we were inclined so to hold under the pleadings here made, appellants and appellees each had the right to tender evidence to show that said will was or was not contractual in its nature. Such we believe to be the rule stated in the Larrabee and Bradford cases supra.

Bearing in mind the foregoing rules quoted from Nye v. Bradford, supra, let us examine the record here. First, looking at the terms of the will alone, can it be said that there was any consideration moving to the testator and testatrix for the provision in the will that the property on hand "at the date of the death of the survivor of us and which belongs to the estate of John M. Powell is hereby willed and bequeathed to the kindred by blood of the said John M. Powell, to pass to such kindred by blood, according to the laws of descent and distribution of the State of Texas" and a like provision that "the property belonging to the estate of the said Blanche Powell is hereby willed to and bequeathed to the kindred by blood of the said Blanche Powell, to pass to such kindred by blood according to the laws of descent and distribution of the State of Texas?" We think not. Certainly, neither John M. Powell, nor his kindred by blood, could be legally interested or suffer any detriment if Blanche Powell executed a new will changing the foregoing provisions as it related to her kindred by blood. Assuming, for the sake of argument, that there was a contractual agreement between the testator and testatrix with reference to paragraph 5, it is obvious that there was no consideration for such agreement, and, as we understand Larrabee v. Porter, supra, this would be fatal to the agreement.

■ Moreover, in the 3rd paragraph, the will states: "It is our further mutual will that the survivor of one of us shall have the use of, during and for the term of the natural life of the survivor, etc." Paragraph 3 tenders the issue that there was consideration moving from one to the

other for the provisions there stated. Now, passing to paragraph 5 of the will, upon which appellants rely for relief, we find it is prefaced by the statement: "It is our further joint Will and Testament that upon the death of both of us, that then and in that event, we hereby bequeath the property owned by us and belonging to each of us and to which each of us holds title, as follows, to-wit, etc." We think it is significant that the term "mutual" was not used in the 5th paragraph. Indeed, neither John M. Powell nor Blanche Powell knew or could have known who were and would be their heirs or "blood kin" and entitled to a share of their property under the laws of descent and distribution at their deaths. It seems to us, under the foregoing undisputed factual situation, the will conclusively shows that there was a want of consideration as well as mutuality with reference to the provisions of paragraph 5. If we are mistaken in this view, then under the record here made an issue was tendered for the jury. Webster's New International Dictionary defines "mutual wills" as "wills made by two or more persons containing similar or identical testamentary provisions in favor of each other or of the same beneficiary." The late Justice Harvey in Nye v. Bradford, Tex.Civ.App., 189 S.W.2d 889, at page 894, said: "A joint will is not necessarily a mutual one. For a will to be both joint and mutual, it is quite uniformly held that it must be the will of two or more persons contained in a single testamentary instrument, jointly executed by them pursuant to an agreement or compact to dispose of their respective estates either to each other or to third parties in some certain manner." Citing 69 C.J., secs. 2709, 2714 and 2719. In Nye v. Bradford, our Supreme Court specifically pointed out: "The will is jointly executed and speaks in all of its paragraphs as the joint act of the testators. Together they bequeath and devise their property, all of which is community property. Nowhere do they separately devise or bequeath their interests in the property, as the testators did in Garland v. Meyer, Tex. Civ.App., 169 S.W.2d 531 [no writ his-

tory], and in Curtis v. Aycock, Tex.Civ. App., 179 S.W.2d 843 [nre]. The will does not dispose of the property generally to the named devisees, but it carefully makes separate specific devises of certain designated real estate to each of the two children." The foregoing statement by the Supreme Court, we think, is applicable to the factual situation in Larrabee v. Porter, supra (see Harrell v. Hickman, supra) because in that case Larrabee and his wife duly executed their joint and mutual will, by which they gave to the survivor a life estate in all of their property, both joint and several, with remainder, share and share alike, to their five daughters (naming them), with a further provision that all persons who, under the laws of descent and distribution of their estate, might claim, demand or have any title or interest in any part of the property of which they might die possessed, were cut off and barred from any claim or demand forever. The foregoing distinctions are not present in the case at bar. Moreover, the opinion in the Larrabee v. Porter case says [166 S.W. 401]:

"In the instant case, if the will itself does not imply or import a contract to execute it (which we are inclined to think is the case), yet the evidence is clear, and the jury found that the same was executed by reason of a previous contract between the parties to make it, giving to each a life estate in their entire property, with remainder to their daughters. This will was executed upon a valid consideration, to wit, the reciprocal devise of the one to the other * * *."

We think that it is significant that in the Larrabee case, as well as in the Bradford case, that each held that extrinsic evidence was admissible to show whether or not the testator and testatrix executed the respective wills pursuant to an agreement. Looking at the 1917 will from its four corners, it is our view that no consideration passed from the testator to the testatrix with reference to the provisions of paragraph 5, and that the will does not conclusively prove by its terms or recitals that there

was an agreement between the testator and testatrix as to such provision. Moreover, we think that in the 1917 will John M. Powell devised only his estate, and he made no effort to dispose of the estate of his wife Blanche Powell. This being true, Blanche Powell was not put to an election to accept or reject her husband's will, and, not having to elect, she cannot be estopped by taking under his will. See Graser v. Graser, 147 Tex. 404, 215 S.W.2d 867. It seems clear to us that the doctrine of estoppel has no application here.

■ But going back to the rule announced in the Larrabee and Bradford cases, we must look also to the facts and circumstances surrounding the execution of the will and the testimony tendered thereon. Wallace Powell, a nephew of John M. Powell, testified to the effect that he had a conversation with his uncle some two or three months after the Powells lost their son:

"Q. State to the best of your remembrance that conversation. A. Well, I walked up the street and Uncle John was standing just around the corner off of Main Street there. I stopped and talked with him and he said, 'Wallace, since Milton passed away me and your Aunt Blanche have made a will—we possibly will have no heirs—' and he said, 'If I go first— * * * He said, 'Me and your Aunt Blanche have made a will,' and said, 'each of us is to keep our property as long as we live and then at our death her part of it will go back to her people and my part of it will go back to you children.' Now, as well as I remember that is just exactly the words he told it."

Mrs. Willie Guggolz testified that she had a conversation with Mrs. Blanche Powell concerning the 1917 will:

"A. I said she spoke to me about it frequently after her husband's death, saying that they had made this will, in which they had given their property to each other, at the death of either of

them, and then at the death of the survivor it was to be divided according to the two sides, the Powell side going to his people and hers going to her blood kin."

The foregoing witnesses were tendered by appellants.

Ray H. Byrom, witness for appellees, and one of the witnesses to the will of Mrs. Powell executed in September 1953, testified in part:

"Q. After the will was signed will you state whether or not she made any statement or had any conversation with you with reference to the execution of that will or the John M. Powell will? A. She did make some reference to a will she had made with her husband.

"Q. What did she say to you? Use her language * * *

"Q. Use her words as near as you can. A. As I recall, she said that she and Mr. Powell entered into this original will with the agreement that the survivor could and should make a will of their own. * * *

"Q. In your conversation with Mrs. Powell she did say that she and John M. Powell did have an agreement? A. Well, she said, Albert, that they had made a will, that they had agreed that the survivor had the power to come along and make a will.

"Q. Was it your understanding that they had an agreement to make that 1917 will? * * *

"Q. Is it your best recollection that what she said was that she had an agreement on that 1917 will? A. Yes.

"Q. She did have an agreement with John Powell on the 1917 will? A. They had an agreement, the way I understood it, that the survivor would have the authority and could or should make a will."

Othar G. Johnson, another witness to the 1953 will of Blanche Powell, testified in part:

"Q. I will ask you to state whether or not at the time that the will was executed or shortly thereafter, while you were there, Mrs. Powell made any statement to you with reference to the John M. Powell and Blanche Powell will? A. Yes, sir.

"Q. I will ask you to state in your own language what she said. * * * A. She said that her and Mr. Powell had agreed that either one of the survivors could make a new will."

Bailey Curry, tendered by appellants, another witness to the 1953 will of Blanche Powell, testified in part:

"Q. Do you recall who else was there when the will was witnessed? A. Mrs. Powell, Othar Johnson, and Ray Byrom and myself.

"Q. Did you all arrive at the house at the same time? A. Not exactly at the same time but probably pretty close together.

"Q. Were they there any time before you were there? A. As well as I remember Ray Byrom was there before me and then Othar Johnson.

"Q. Did you leave at the same time? A. Yes.

"Q. Do you recall any conversation or statement of Mrs. Powell after she had executed the will? A. Well, not exactly. She made the remark that she was making a new will, mostly to give some additional money to the churches. That is the only remark she made.

"Q. Did she make any statement to you with relation to the fact that she had an agreement with her husband that she could change the will she already had in existence? A. No, sir, she did not make that statement."

Under the foregoing record, it is our view that Issue No. 1 was tendered by the pleadings and the evidence and that the evidence is sufficient to sustain the jury finding thereon.

■ It naturally follows from what we have said that we are of the further view that the court did not err in permitting the witness Ray Byrom and the witness Othar Johnson to testify as to the conversation and declarations of testatrix, Blanche Powell, and Point 4 is overruled on the authority of Larrabee and Bradford cases supra.

■ Nor do we think the court committed reversible error in refusing to give appellants' special instruction to the jury concerning the definition of a joint will and a mutual will, which instruction we have heretofore set out. Under Rule 279, Texas Rules of Civil Procedure, it was the court's duty to submit the controlling issues made by the written pleadings and the evidence, and we think Issues 1 and 2 were clear and submitted the issues tendered by the pleadings and the evidence, and that the special instruction requested would have tended to confuse the jury, and we think it was to some extent a comment upon the weight of the evidence.

Being of the foregoing view, it follows that we are of the further view that the appellants' objections and exceptions to the court's charge, heretofore set out, were without merit and by reason thereof, Points 5 and 6 are both overruled.

Since our Supreme Court has not seen fit to change the rule of law stated in Larrabee v. Porter, or the statement of the rule it made in Nye v. Bradford, and since we are of the view that each of the controlling contentions made by appellants is answered adversely to them by the opinions in the foregoing cases, we feel that further discussion would be of no avail.

Finding no reversible error in the record here made, we think the judgment of the trial court should be in all things affirmed.

Accordingly, the judgment is affirmed.