**NYE et al. v. BRADFORD.**

No. 6165.

Court of Civil Appeals of Texas. Texarkana.

June 14, 1945.

On Motion for Rehearing July 26, 1945.

Rehearing Denied Oct. 4, 1945.

Jones & Jones, of Mineola, for appellants.

Troy Smith and Kelley Smith, both of Tyler, for appellee.

HALL, Chief Justice.

The agreed statement of the nature of the case is that this suit was instituted in the District Court of Wood County, Texas, by Robert R. Bradford, appellee, against his sister, Mrs. Florrie Nye, and her husband, Bill Nye, in trespass to try title to recover an undivided one-half interest in Lots Nos. 5, 6, 7 and 8, in Block No. 9 of the City of Mineola, Wood County, Texas, and all fixtures, furniture and household goods located in said house on said above described lots.. Defendants answered with general denial, plea of not guilty, and "for further and special answer herein without waiving any other defense in their behalf" pleaded a deed from Mrs. Mattie Bradford to the defendant, Mrs. Florrie Nye, dated March 5, 1943, further pleaded that for many years prior to her death, Mrs. Mattie Bradford was in poor health and an invalid and that said deed was executed to her daughter, Mrs. Nye, under an agreement between Mrs. Nye and Mrs. Bradford that Mrs. Nye was to look after and take care of Mrs. Bradford as long as she lived and that she had previous to said agreement, nursed, looked after and taken care of Mrs. Bradford for several years, and that said deed was made to her in payment for services already rendered and to be rendered in caring for her mother, Mrs. Mattie Bradford.

Based upon a jury finding that the consideration for the deed was not as contended by appellants, judgment was rendered for appellee for a one-half undivided interest in the property.

Under their first three points appellants contend that they are entitled to judgment notwithstanding the verdict of the jury, because the undisputed evidence shows that the real consideration for the deed from Mrs. Mattie Bradford to appellant Florrie Nye "was for services rendered and to be rendered" by Mrs. Nye in supporting and

taking care of grantor (Mrs. Bradford) and that said services were rendered; that the consideration set out in the deed was not contractual in character so as to prohibit proof of the real consideration and that under the will Mrs. Bradford had the legal right to convey the property to appellant Florrie Nye for the true consideration shown by the evidence offered. The deed from Mrs. Bradford to appellant Florrie Nye is:

"Know All Men by These Presents:

"That I, Mattie Bradford, a widow of the County of Wood, State of Texas, for and in consideration of the sum of One Dollar and other consideration Dollars, to me in hand paid by Mrs. Florrie Nye, the consideration being the love and affection which I bear toward the grantee, who is my daughter, have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto the said Mrs. Florrie Nye, in her own separate right and estate, of the County of Dallas, State of Texas, all that certain lots, tracts and parcels of land situated in the town of Mineola, Wood County, Texas, Lots Nos. Five (5), Six (6), Seven (7), Eight (8) in Block Nine (9) of the City of Mineola, Wood County, Texas, said land being originally out of the William Page Survey.

"Also all fixtures, furniture and household goods located in the dwelling situated on above described lots.

"Grantor expressly reserves a life estate in the above described property together with the right to retain possession and collect all rents and revenues therefrom during the life of the Grantor.

"To have and to hold the above described premises, together with all and singular, the rights and appurtenances, thereto in anywise belonging unto the said Mrs. Florrie Nye in her own separate right and estate, her heirs and assigns forever; and I do hereby bind myself, my heirs, executors, and administrators, to Warrant and Forever Defend all and singular the said premises unto the said Mrs. Florrie Nye in her own separate right and estate, her heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same or any part thereof."

It is undisputed that Mrs. Bradford was an invalid for quite a while before she died, and required constant attention. It is also undisputed that Mrs. Nye, the daughter, moved from her home in Dallas to Tyler, took her mother into her new home and cared for and nursed her for several months before the mother's death. Several witnesses offered by appellants were permitted to testify, over the objection of appellee, to conversations had with the grantor, Mrs. Bradford, to the effect that she either had conveyed or contemplated conveying the property to Mrs. Nye in consideration for services rendered and to be rendered during her last illness. The trial court refused to permit appellant Mrs. Nye to testify to similar statements on the theory that such testimony was inhibited by R.C.S. Article 3716, commonly known as the "dead man's statute." It is our opinion that neither the testimony admitted nor that proffered by appellant Mrs. Nye is admissible. While it is true that appellants offered this testimony for the purpose of showing the true consideration, still it performed another equally important function, that of changing the character of the estate conveyed. The deed upon its face shows that the land conveyed was the separate estate of appellant Mrs. Nye. The testimony admitted, as well as that of Mrs. Nye, which was refused, would change the estate conveyed by the deed to community property of appellants Mrs. Nye and her husband, Bill Nye. This for the reason that Mrs. Nye's service rendered during coverture would constitute community earnings. Such evidence would contradict the plain language of the deed which is contractual in nature. This should never be permitted in the absence of fraud, accident or mutual mistake. Justice Williams of our Supreme Court in the case of Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825, 827, clearly states the rule to be:

"The statement in the deed from Kahn to his wife is more than the mere statement of a fact. Under the decisions referred to, its legal effect is to show the character of the right to be created by this deed, and is as much a contractual recital as any in the instrument, and belongs to that class of particular and contractual recitals which, in deeds, estop the parties from denying them."

See also Kahle v. Stone, 95 Tex. 106, 65 S.W. 623; McKivett v. McKivett, 123 Tex. 298, 70 S.W.2d 694; Davis v. Davis, 141 Tex. 613, 175 S.W.2d 226, and authorities there cited. These points are overruled.

Appellants' 7th point is:

"In any event the trial court should have rendered judgment in favor of the appellant, Mrs. Florrie Nye, for a three-fourths (¾) undivided interest in the land in controversy, the appellant being entitled to a one-fourth (¼) interest under the terms of the will of R. T. Bradford, and a one-half (½) interest by reason of the deed from Mrs. Mattie Bradford to appellant, Mrs. Florrie Nye."

The joint will of R. T. Bradford and wife, Mattie Bradford, follows:

"The State of Texas
"County of Wood

"Know All Men by These Presents: That we, R. T. Bradford and wife, Mattie Bradford, of the County of Wood and State of Texas, both being of sound mind and disposing memory, do hereby make and publish this our Last Will and Testament, hereby revoking all wills heretofore made by us or either of us.

"First. It is our will that upon our respective deaths that our bodies be buried in decent, and Christianlike manner suitable to our circumstances and condition in life.

"Second. It is our will and desire that all our just debts be paid upon our respective deaths by our Executor hereinafter appointed.

"Third. We do hereby will, bequeath and devise to the survivor of us all property of which either of us shall be seized and possessed at the time of our respective deaths, whether real, personal or mixed, and wherever situated, to be owned and held by said survivor during his or her lifetime, with remainder over to our beloved children, to-wit: Mrs. Florrie May Bradford Nye and Robert Roy Bradford, as is hereinafter more fully set out.

"Fourth. We do hereby will, bequeath, and devise to our beloved daughter, Mrs. Florrie Bradford Nye, to be owned in fee simple, upon the termination of the life estate of the survivor of us, the following property, to-wit:

"1. The two story house and lot on which same is situated in the City of Tyler, Smith County, Texas, and located at 328 Houston Street.

"2. The Duplex house and lot on which same is situated in the City of Tyler, Smith County, Texas, and located at 514 West Selman Street.

"3. A one half undivided interest in the one story and half house situated in the City of Tyler, Smith County, Texas, and lot on which same is situated, and located at 518 West Selman Street. It is also our will that our said daughter shall have the right and authority to collect all rents on said property, but shall pay one half of same to our son, Robert Roy Bradford.

"4. A one half undivided interest in our home place and lot on which same is situated, and located in the City of Mineola, Wood County, Texas, at 115 Wigley Street. However, the survivor of us is full authorized and empowered to sell said home place in the event he or she may so desire.

"Fifth. We do hereby will, bequeath, and devise to our beloved son, Robert Roy Bradford, to be owned in fee simple, upon the termination of the life estate of the survivor of us, the following property to-wit:

"1. The one story house and lot on which same is situated, located in the City of Tyler, Smith County, Texas, at 324 West Houston Street.

"2. The one story house and lot on which same is situated, located in the City of Tyler, Smith County, Texas, at 508 West Selman Street, and being the same residence in which he now resides.

"3. A one half undivided interest in the one story and half house situated in the City of Tyler, Texas, Smith County, and lot on which same is located and located at 518 West Selman Street, provided however our said daughter shall have the right to collect the rents due on same as above provided.

"4. A one half undivided interest in our home place and lot on which same is located, located in the town of Mineola, Wood County, Texas, at 115 Wigley Street, subject, however, to the right of the survivor of us to sell the same as above provided.

"Sixth. It is our will and we do hereby will, bequeath, and devise to our said children share and share alike, any other property real, personal, or mixed we may own at the time of our respective deaths, subject only to the life estate of the survivor of us as above provided.

"Seventh. We do hereby appoint and constitute the survivor of us the sole

Executor or Executrix of this our joint will.

"Eighth. It is our will and desire that no bond or other security shall be required of said Executor or Executrix, and that no action shall be had in the Probate Court in the administration of our estate than to prove and record this will and to return inventory and appraisement.

"Ninth. It is our will and desire that the survivor of us shall erect a suitable monument at the grave of the first of us to die, same to cost what the survivor of us may deem proper and necessary.

"Witness our hands at Mineola, Texas, this the 12th day of November, A. D. 1938.

"Signed R. T. Bradford

"Signed Mattie Bradford."

The undisputed evidence in the record reflects at the time of the execution of the will both Mr. and Mrs. Bradford stated that they "were going to treat Bob and Florrie (appellee and appellant, their two children) exactly alike. All the property disposed of by the will was community property of Mr. and Mrs. Bradford. Shortly after the death of Mr. Bradford, Mrs. Bradford probated the above will as his last will and testament and took under same. In discussing a will similar in form to the one here under discussion, the late Justice Hodges of this Court in the case of Sherman v. Goodson's Heirs, Tex.Civ. App., 219 S.W. 839, 841, w/r, had this to say:

"It is contended that the instrument executed by the Goodson sisters in 1911 was not by its terms a joint will; *that it was an instrument in which each severally undertook to dispose of her property.* It is also insisted that the court erred in concluding that the will was executed in pursuance of an agreement entered into between the sisters. It is further contended that the terms of the joint will permitted the survivor to dispose of any or all of the property on hand, and that this power included the right of disposing of it by will. * * *

"The use of the terms 'joint and several' in other portions of the will was doubtless an effort to prevent the possible failure of any portion of the bequest made as to that part of the property owned by them in severalty. The making of the will was manifestly a joint undertaking, and one which was intended to operate for their mutual good. During the time both of the Misses Goodson lived that will might have been revoked by either of them. It may even be conceded that after the death of one it might have been revoked by the survivor before she accepted the benefits which the will conferred. But upon principle and authority we think it became irrevocable after the survivor ratified the will by having it probated, and then accepted and enjoyed the benefits derived from its provisions. Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395; Moore v. Moore, Tex.Civ.App., 198 S.W. 659; 1 Underhill on Wills, § 13. * * *

"Appellants also contend that the finding of the trial court that the two Misses Goodson had agreed to enter into the will executed by them in 1911 is unsupported by the testimony. The only evidence of any such agreement in the record is the testimony of an attorney that he was summoned by the Misses Goodson to go to their residence and write their will. He wrote the instrument referred to under their direction, and it was formally signed by them. But for the purpose of sustaining the judgment here rendered we think it unnecessary that the court should have found that there was a pre-existing contract to execute the joint will. *The fact that the will was executed in that form conclusively evidences an agreement by the participants to do what was actually done by them. The will became irrevocable after the death of one, not because it was made in pursuance of a previous contract, but because the survivor, after ratifying and accepting the benefits conferred, became estopped to repudiate the will. To allow her after having enjoyed the benefit of those provisions favorable to her, to repudiate those not favorable would countenance the perpetration of a fraud, which should not be tolerated by a court of equity.* (Italics ours.)

"It is further contended that under the terms of the will itself Sue E. Goodson had the power to dispose of all the property during her lifetime, and that this included the power to dispose of it by her will. Such a construction would be in direct conflict with the language of the will. That instrument expressly provides and directs how the property that remains after the death of both shall be disposed of. That provision is wholly inconsistent with a purpose to endow the survivor with power to make a different disposition."

The above case is certainly authority for holding the will here under discussion to be the joint and mutual will of Mr. and Mrs. Bradford. The will shows upon its face to be of such character. It shows conclusively to our minds that these old people were dealing with their community property so as to protect the survivor with the remainder in equal proportions to their two children. The record shows that they had executed two wills previously in which the son had been preferred over the daughter, but before executing this will they had forgiven the daughter and had agreed to treat the two children "exactly alike." The will being joint and mutual in form, made under a prior agreement to treat their children alike, taken with the fact that Mrs. Bradford probated and took under the will, inclines us to the view that such action on her part was sufficient to estop her from disposing of any of the joint property except as provided in the will. And this would be our conclusion but for the holding in Aniol v. Aniol, 127 Tex. 576, 94 S.W.2d 425, 427, by the Commission of Appeals where a contrary pronouncement to that reached by this Court in Sherman v. Goodson's Heirs, supra, is adopted by the Supreme Court. In the Aniol case, too, the will under consideration is similar in form to the one here. In that opinion we find this significant statement.

"We do not find it necessary to determine the question of whether or not the instrument was technically a 'joint' will, or whether or not, if such, it was subject to probate as a valid will. We think that it is susceptible of the construction as being the separate will of * * * Agnes Aniol, we must treat it as such in this proceeding. March v. Huyter, 50 Tex. 243; Wyche v. Clapp, 43 Tex. 543. We are concerned, therefore, solely with the question of what effect said instrument has upon the estate of Henry Aniol while he is still living."

The opinion then quotes with approval extensively from the case of Wyche v. Clapp, 43 Tex. 543, to show that a joint and mutual will even after having been probated by the survivor is subject to revocation by him. Judge German reaches the conclusion that:

"This decision (Wyche, supra) is direct authority for the proposition that prior to the death of Henry Aniol his estate is in no manner bound by any of the provisions of the will. There is nothing whatever in the instrument which puts upon him the burden of an election, and as he had the right to remain in possession of the property under his homestead right and as a part owner, there is no force in the contention of plaintiff in error that he is estopped to revoke or avoid the terms of the will."

This holding expressly approved by the Supreme Court drives us to the conclusion: (1) That even though the will be the joint and mutual will of Mr. and Mrs. Bradford, it having been probated as the will of R. T. Bradford, "we must treat it as such in this proceeding"; and (2) that the act of Mrs. Bradford as survivor in probating the will as that of her husband and taking under its terms, did not estop her from afterward disposing of her part of the estate. This being true, Mrs. Bradford was within her rights in making the deed of gift copied above, insofar as it affected her portion of the estate in controversy, to appellant Mrs. Nye, and by said deed Mrs. Nye holds title to an undivided one-half interest in the property. She is entitled also to a one-half interest in her father's estate, the equivalent of a one-fourth undivided interest in the property here in controversy, thus making her interest three-fourths undivided interest in the property instead of one-half undivided interest therein.

We have examined all other points advanced by appellants, they are thought to be without merit, and are overruled.

The judgment of the trial court is reformed so as to give to appellee a one-fourth undivided interest in the property and to appellants an undivided three-fourths interest in the property, and as so reformed the judgment is affirmed.

Reformed and affirmed.

On Motion for Rehearing.

HARVEY, Justice.

After further consideration of the several motions filed for rehearing herein, the majority of the Court are of the opinion that the motion of appellee, Robert R. Bradford, should be granted and the judgment of the trial court in all things be affirmed.

We are in accord with the very splendid reasoning contained in the original opinion handed down in this cause, and the conclusions reached therein, with the exception of the construction placed upon the will of R. T. and Mattie Bradford. It is our opinion that evidence is not admissible to vary the consideration recited in the

deed from Mrs. Mattie Bradford to Mrs. Florrie Nye, in that to do so would permit a change in the estate granted to be made; that is to say, to allow by such testimony a change in the interest conveyed to Mrs. Florrie Nye from a community estate to her separate estate.

With respect to the type of will made by R. T. Bradford and wife, Mrs. Mattie Bradford, we are of the opinion that under all the facts and circumstances surrounding its execution, unquestionably it is a joint and mutual will. Joint wills, and joint and mutual wills have received firm recognition and judicial sanction in doubtless all jurisdictions; their nature and characteristics is not a debatable question. A joint will is not necessarily a mutual one. For a will to be both joint and mutual, it is quite uniformly held that it must be the will of two or more persons contained in a single testamentary instrument, jointly executed by them pursuant to an agreement or compact to dispose of their respective estates either to each other or to third parties·in some certain manner. See 69 C.J. Secs. 2709, 2714, and 2719. The distinguishing characteristic of such a will is the covenant or contract made by the testamentary parties thereto pursuant to which the will is jointly executed. Prior to the death of either party, such a will might be revocable; after the decease of either one and the other party probates the will and takes under it, he not only may be held in equity to the terms of the will, but he is estopped to deny its provisions.

In the instant case, the will was joint and mutual in form; it was made pursuant to an agreement between the signatory parties that a certain disposition should be made of their community estate. The survivor was to receive a life estate in the property, with remainder to the two children, who were to be treated exactly alike. After the death of R. T. Bradford, his widow probated the will and took under its plain provisions. Having done so, she was not in position to revoke her will, and was estopped to deny its effectiveness. In our judgment, this situation comes squarely within the decision in the case of Sherman v. Goodson's Heirs, Tex.Civ.App., 219 S.W. 839, which is still followed in subsequent cases. Belkin v. Ray, Tex. Sup., 176 S.W.2d 162. To hold otherwise would be, in effect, to destroy completely wills which have been approved as to being joint, or joint and mutual. No longer would they be recognized in our jurisprudence.

The case of Aniol v. Aniol, 127 Tex. 576, 94 S.W.2d 425, upon which our learned colleague predicates his position, in our opinion is not decisive of the case we have under discussion. In that case the court held that agreements to make mutual wills are valid, but that their testamentary character and import alone are not sufficient to make them such. In the Aniol case, there was no agreement to make a mutual will; no election to take under it was made by the survivor, since the property involved was a homestead and an election by him was not required. We think a correct decision was arrived at in the Aniol case but that such case is not applicable to the facts in the present one. An examination of the case of March v. Huyter, 50 Tex. 243, and the case of Wyche v. Clapp, 43 Tex. 543, will disclose that the court in each case took pains to point out that there was no contract or agreement to make a mutual will. Too, in those cases there was no election to take under the wills in question, and no question of estoppel presented.

Such·being true, Mrs. Mattie Bradford could do only what she was authorized to do under the will; namely, sell the property to pay debts. Her deed to Mrs. Florrie Nye thus was ineffective to pass title.

The judgment heretofore entered by this Court reversing and reforming the judgment of the district court is set aside and the judgment of the trial court is affirmed.

WILLIAMS, J., concurring.

HALL, Chief Justice (dissenting).

I am unable to agree with the majority opinion of this Court affirming the judgment of the lower court. The disposition made of this case in the original opinion handed down June 14 1945, in my judgment, correctly disposes of same. I think the opinion of the Supreme Court in Aniol v. Aniol, 127 Tex. 576, 94 S.W.2d 425, is controlling here and sustains the former opinion of this Court. In this case, as in that, the property in controversy was the homestead of the survivor, Mrs. Bradford, and her rights to the homestead in nowise depended upon the will, or her taking under it, even though said will was mutual in form.

I adopt the original opinion of this Court as my dissent in full.