**In the Matter of the ESTATE OF Mary MURPHY, Deceased.**

**No. 13–83–497–CV.**

Court of Appeals of Texas,
Corpus Christi.

Dec. 20, 1984.

Rehearing Denied March 7, 1985.

Amended Rehearing Overruled
March 7, 1985.

Tom Beasley, Beasley & Beasley, Beeville, Allen Wood, Corpus Christi, for appellant.

Harry J. Schulz, Schulz & Schulz, Three Rivers, Robert D. Nogueira, Beeville, for appellee.

Before NYE, C.J., and SEERDEN and KENNEDY, JJ.

## OPINION

SEERDEN, Justice.

This is a will contest. Both appellant and appellee offered a different will of Mary Murphy, deceased, for probate. Appellant, John Murphy, offered a written will of Mary Murphy, deceased, which had been executed on October 3, 1979. Appellee, Robert D. Nogueira, offered a written will which the deceased had executed on November 23, 1959.

After numerous hearings and orders including the granting of a partial summary judgment relating to the contractual nature of the wills of Margaret and Mary Murphy which were executed on November 23, 1959, and a jury trial which resulted in a verdict finding that on October 3, 1979, Mary Murphy was acting under undue influence when she executed her will, the trial court entered judgment that the October 3, 1979 will was invalid; that the "long-form will" of Mary Murphy executed on November 23, 1959 be admitted to probate, and made other appropriate related orders.

In his first two points of error, appellant challenges whether there was any evidence, or, in the alternative, sufficient evidence to support the jury's finding that Mary Murphy executed the October 3, 1979 will while acting under undue influence. In considering these points, this Court will follow the well established principles that are set forth in *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

■ "When undue influence is alleged as grounds for setting aside the probate of a will, the burden is upon the contestant to prove the allegation by a preponderance of the evidence." *Estate of Woods*, 542 S.W.2d 845 (Tex.1976). In order to set aside a will on the basis of undue influence, the contestant must prove: 1) the existence and exercise of an influence; 2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the will; and 3) the execution of a will which the maker thereof would not have executed but for such influence. *Rothermel v. Duncan*, 369 S.W.2d 917 (Tex.1963); *Click v. Sutton*, 438 S.W.2d 610 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.); *Garza v. Garza*, 390 S.W.2d 45 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.). Factors to be considered include evidence of infirmity of mind produced by age; ill health; circumstances attending the execution of the instrument; opportunity for the exercise of influence that would destroy the exercise of free agency and an unnatural or unjust disposition by the instrument. *Click v. Sutton*, 438 S.W.2d at 613.

The trial court instructed the jury as follows on the law of circumstantial evidence:

"undue influence can be established by what is known as circumstantial evidence as well as direct evidence and a fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by witnesses who saw the act done or heard the words spoken or by documentary evidence. A fact is established by circumstantial evidence when it may be fairly or reasonably inferred from other facts proved."

There was no objection to this instruction.

■ A fact issue is raised by circumstantial evidence if, from the evidence, a reasonable person would conclude that the existence of the facts is more reasonable than its nonexistence. All that is required is that the circumstances point to ultimate facts sought to be established with such a degree of certainty as to make the conclusion reasonably probable. *Smith v. Tennessee Life Ins. Co.*, 618 S.W.2d 829 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ).

■ The fact of "undue influence" in the execution of a will may be, and in fact, almost always is, proven by circumstantial evidence. There is seldom any actual direct evidence of this type of conduct. *Long v. Long*, 133 Tex. 96, 125 S.W.2d 1034 (1939).

■ The *Long* case, supra, sets out basic principles regarding undue influence which have been cited repeatedly by appellate courts in dealing with the issue. It is observed that no definition of undue influence fits all forms and fact situations, and that every case must depend largely on its own facts and circumstances. Every influence exerted by one person over the mind of another is not undue influence. It only becomes so when the free agency of the testator has been destroyed and the will of another is substituted in its place.

■ While mental capacity and undue influence are separate concepts, weakness of mind and body may be considered as circumstances in determining whether a person is susceptible to undue influence.

Because of the questions raised by this appeal, it is necessary to make a rather detailed statement concerning the family history and circumstances surrounding these two wills.

Mary and Margaret Murphy were sisters. They lived in Bee County in their family ancestral home all their lives. Neither ever married. At the time of their deaths, they were each the sole heir of the other. On November 23, 1959, when the sisters were 79 and 77 years of age respectively, they each executed two separate wills as well as a letter of instruction to appellee, the lawyer who prepared the wills. One of the wills executed by each sister was a short will, referred to by the parties and by us as the "short-form will." These wills left all of the property of the testator to her sister and appointed the sister as executrix. The letter of instruction directed appellee, upon the death of the first sister, to probate her short-form will. The other wills, executed by each of the sisters, are designated as the "long-

form wills." When the surviving sister died, the "long-form" will was to be probated. Appellee was appointed executor in these "long-form wills." On July 18, 1974, Mary Murphy requested that appellee deliver the 1959 wills to John Murphy. According to appellee's own testimony, he did no further legal work for the Murphy sisters after preparing the 1959 wills. There is evidence that John C. Beasley and his law firm, along with that firm's employee, Norene Davidson, handled legal work for the sister thereafter. In 1974, Mary Murphy executed a will and either destroyed or directed to be destroyed, her 1959 wills. This will was not offered for probate.

Margaret was the first of the sisters to die. She died in 1979 at the age of 97 years. At the trial of this case, there was evidence that since at least the year 1973, she had suffered from severe arteriosclerosis and advanced senility and was of unsound mind.

Upon Margaret's death, her short-form will was probated and Mary accepted the benefits as the sole beneficiary and legatee of such will. She also was appointed, at her request, independent executrix of the will. Because of Mary's advanced age, according to her own motion, the court appointed the Commercial National Bank of Beeville, Texas, as administrator with the will annexed.

Prior to Margaret's death, other significant events had occurred. It must be noted that Mary Murphy had been totally blind for approximately 40 years prior to her death on December 1, 1980. For this reason, as long as her sister, Margaret, was able, she took personal care of Mary. Naturally, when Margaret became unable to do so, the burden fell upon Mary, whose mental capacity is not questioned in this case, to handle and take care of Margaret and handle their affairs. Because of her blindness, it was natural that she look to others for assistance. It is the contention of appellee, that those to whom Mary Murphy looked for help took advantage of her and unduly influenced her to execute certain documents including the will, dated

October 3, 1979, which appellant offers for probate.

Beginning in 1960, Norene Davidson began visiting the Murphy sisters in their home. Mrs. Davidson had begun working for the law firm of Beasley and Beasley in Beeville, Texas, on February 15, 1959, and continued to be so employed as the secretary, office manager and person responsible for handling the books not only of the law firm but of the Beasley family's personal business affairs. She worked for John C. Beasley of such firm until May 15, 1979. Her association with the Murphy sisters began as a result of her employment for John C. Beasley. Sometime around the year 1966, her visits with the Murphy sisters became more frequent and were held once or twice a month. There is evidence which implies that in later years the visits may have been more often. After she quit working for John C. Beasley, she continued to visit Miss Mary and was employed by her. She talked with Mary Murphy about her will and through the years became a close friend and adviser and intermediary between Mary Murphy and John C. Beasley.

Beasley began representing the Murphy sisters at some period of time. He handled some oil and gas lease matters for them as well as other matters relating to their real estate. In April 1974, Beasley prepared a general power of attorney from Margaret Murphy to John J. O'Brien and John Murphy. John J. O'Brien owned substantial amounts of ranch lands adjacent to the Murphy sisters and had leased the Murphy lands for many years and continued to do so until the land sales, to which mention is hereafter made. This instrument was notarized by Norene Davidson. There was evidence at the trial that the signature of Margaret Murphy on the power of attorney was not hers.

John Murphy was a first cousin of the Murphy sisters. He had worked most of his life in ranching and had been employed practically all his life by one or another branch of the ranching family of which John J. O'Brien was a member. John Mur-

phy and John J. O'Brien had been conducting the Murphy sisters business for them since November of 1964. John O'Brien died in 1975, but John Murphy continued to serve as the Murphy sisters' attorney in fact.

In June 1976, the Murphy sisters, with Margaret acting through her agent and attorney in fact, John Murphy conveyed 1374.92 acres, representing one-half of their ranch property to John Morgan O'Brien, III, a grandson of John J. O'Brien, for the sum of $175.00 per acre. In February 1978, the Murphy sisters sold the other one-half of their ranch lands to two other grandsons of John J. O'Brien for $200.00 per acre. The evidence at the trial was that the value of this land was more than $400.00 per acre. The payment terms of each sale were also extremely favorable to the O'Briens. Norene Davidson was active in setting up these payment terms.

John C. Beasley handled legal work for the Murphy sisters during these transactions and he and his firm were also the lawyers for the O'Brien family and estate and had been long prior to 1960.

On August 24, 1979, 16 days after the death of her sister, Margaret, Mary Murphy signed a ratification deed in favor of the O'Brien grantees in the two deeds mentioned above. This ratification was prepared by John C. Beasley and was read to her by Norene Davidson.

The primary difference between the 1959 will and the 1979 wills is the appointment of the executor. The 1959 will appoints appellee as executor and the 1979 will appoints John Murphy, Grace Fox Malone and Norene Davidson as joint legal representatives of the wills, and further provides that should any of them be unable or disqualified from serving, the administration shall be continued by those who continued to be qualified.

Grace Fox Malone was a frequent visitor in the Murphy home, and as a client of John C. Beasley she had been appointed, along with John C. Murphy, as agent and attorney for Miss Mary and had also been a witness to many of the documents signed

by the Murphy sisters, including Margaret's power of attorney, which is dated in 1974, at a time when there was testimony that she was of unsound mind.

It is appellee's contention that the primary reason for the execution of the 1979 will was to appoint executors friendly to the O'Briens so that the land sales described above would not be attacked.

While there were some differences in the beneficiaries of the two wills, none of the beneficiaries of either will have complained and none are parties to this suit.

In the case at bar, there is little question that Mary Murphy was susceptible to being unduly influenced. There is also no question that Norene Davidson, John Murphy, and John C. Beasley were in prime positions to exercise such influence.

It has also been observed that the establishment of circumstances to exert undue influence which is due to being in a position of caring for the person upon whom the influence is being exerted may be equally consistent with the theory of innocence as it is with the theory of wrongdoing. *Estate of Woods*, 542 S.W.2d 845 (Tex.1976).

■ The record in this case is voluminous. The evidence raises questions of the propriety of the land sales, and a conflict of interest between the lawyer and his employee and the testator; however, after carefully reviewing all the evidence in this case, we find nothing directly or by circumstances, which touches on the circumstances or exertion of any undue influence at the time of the execution of the 1979 will or that such will contains matters which the maker would not have included except for such influence. Accordingly, appellant's first point of error is sustained.

■ Appellant, in his third point of error, contends that the trial court erred in granting Appellee's (Nogueira's) motion for partial summary judgment. We agree. To be entitled to a summary judgment, the burden is on the movant to establish as a matter of law that there is no genuine issue of fact. *Spellings v. Lawyers Title Insurance Corp.*, 644 S.W.2d 804 (Tex.

App.—Corpus Christi 1982, writ ref'd n.r. e.). Attached to John Murphy's Response to The Motion For Partial Summary Judgment is an affidavit of Norene Davidson setting forth that:

"On July 26, 1974, I took Mary Murphy's will to the Murphy residence to be signed.... When Mary had signed her new sill [sic] and it was properly witnessed and notarized, she (Mary) wanted to destroy her 1959 will. I took the blue cover from the 1959 will, and tore each page about an inch, so that she could finish tearing each page in two parts. I left them lying on the north corner of the dining table. You can say that she and I together tore up her will. I felt it belonged to her, and if she wanted to tear it up, that was her right. I left the destroyed will at the Murphy house."

The affidavit also sets forth that Margaret Murphy died on August 8, 1979. Also attached is a copy of Mary Murphy's 1974 will. Where there is not an enforceable contract to the contrary and no fraud, either party to a contractual will has a right to execute a new will without notice to the other party when both parties are still alive and the other party is sui juris. *Freeman v. Freeman*, 569 S.W.2d 626 (Tex.Civ.App. —Eastland 1978, no writ); *see also Nye v. Bradford*, 189 S.W.2d 889 (Tex.Civ.App. 1945—Texarkana), aff'd, 144 Tex. 618, 193 S.W.2d 165 (1946). Accordingly, a fact issue existed as to whether or not Margaret was sui juris and whether the contractual nature of the wills executed by the Murphy sisters in 1959 were repudiated by Mary Murphy's actions in 1974. Appellant's third point of error is sustained.

■ Appellant alleges in his fourth point of error that the trial court erred in admitting, over objection, the testimony of H.H. Laechelin, that Margaret's 1974 power of attorney was not actually executed by her. Appellant also alleges, through his fifth point of error, that the trial court erred in not granting a new trial based on the fact that H.H. Laechelin, after testifying at trial and then giving further study to the signature of Margaret Murphy,

changed his mind and decided that the signature was in fact genuine. Since the genuineness or lack of genuineness of Margaret Murphy's signature on her 1974 power of attorney has no bearing on the issue as to the exercise of undue influence on Mary Murphy at the time she executed her 1979 will, we fail to see how appellant was harmed by the trial court's action. Appellant's fourth and fifth points of error are overruled.

 Setting forth the rule of law applicable to a revocation of a contractual will by the survivor, the court in *Hunt v. Knolle*, 551 S.W.2d 764, 766 (Tex.Civ. App.—Tyler 1977, no writ), said:

> Concerning a subsequent will executed by the survivor of two parties which revokes a prior joint, mutual and contractual will executed by both of said parties, where there is no question as to the competency, execution, witnessing and proof of the subsequent will, the probate court and district court have no alternative but to admit the subsequent will to probate rather than the joint will, "without regard as to whether the joint will was mutual and contractual."

Since Mary Murphy's 1979 will expressly revoked "any and all other Wills and Codicils by [her] at any time heretofore made," and the only issue as to its qualification for probate was the allegation as to the exercise of undue influence, which we have resolved in favor of the 1979 will, the trial court is directed to admit the 1979 will offered by John Murphy to probate. At this time, any contentions as to the contractual obligations incurred through the execution of the 1959 wills may be litigated by the beneficiaries thereunder.[1] *Tips v. Yancey*, 431 S.W.2d 763 (Tex.1968); *Nesbett v. Nesbett*, 428 S.W.2d 663 (Tex.1968).

The judgment of the trial court, admitting the 1959 will to probate and denying application to probate of the 1979 will, is REVERSED with instructions to the trial court to admit the 1979 will to probate. The trial court's order granting partial summary judgment is also REVERSED, and the cause is REMANDED for further proceedings consistent with this opinion.

---

1. While we do not comment at this time as to whether or not Nogueira, either individually or as executor of the 1959 will, has standing to contest the later will, we direct the trial court's attention to *Strasburger v. Compton*, 324 S.W.2d 951 (Tex.Civ.App.—Fort Worth 1959, writ ref'd n.r.e.).