Edward Eugene GAINES, Appellant,

v.

Lamont Dwight FRAWLEY and Dana Scott Frawley, Appellees.

No. 2–86–147–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 12, 1987.

Brewer, Brewer, Suggs, & Associates, and Dennis G. Brewer, Sr., and Scott S. Braugh, and Teri Stewart Mace, Irving, for appellant.

Parry Parnass, Irving, John D. Crawford, A.P.C., and John D. Crawford, Dallas, for appellees.

Before FENDER, C.J., and BURDOCK and LATTIMORE, JJ.

## OPINION

LATTIMORE, Justice.

This is a suit filed by appellees, Lamont Dwight Frawley and Dana Scott Frawley, against Edward Eugene Gaines, appellant, contesting the validity of the will of Lois J. Frawley, deceased. The will was executed on November 14, 1979. The testatrix died on November 17, 1980. Appellees filed their contest on March 10, 1981, alleging testatrix lacked testamentary capacity and appellant exerted undue influence. The matter was first tried on March 26, 1982 with the jury rendering a verdict on the issue of undue influence for the contestants, appellees herein. On December 6, 1982, the probate court entered appellant's judgment N.O.V. Appellees were granted a new trial on February 18, 1983 based on new evidence as to the testamentary capacity of the testatrix. The case again proceeded to trial by jury with a mistrial being declared on October 21, 1983.

This appeal is taken from the judgment of the third trial, wherein, the probate court set aside the will based upon the jury's affirmative findings that although testatrix had testamentary capacity, the will was the result of undue influence exercised upon testatrix by appellant.

The judgment is affirmed.

The issue before this court is whether the record contains any evidence of probative force to support the finding of the jury that undue influence was exercised by Edward Eugene Gaines in the execution of the will of Lois J. Frawley. We shall confine our statement of the evidence to that relied upon by the appellees to support the jury finding.

Lois J. Frawley was the mother of two sons, Lamont Dwight Frawley and Dana Scott Frawley. In 1972, her husband, Donald Willard Frawley, died. Lois Frawley and appellant met for the first time in late 1976 at his Texaco gas station. At that time appellant was married to Linda Welch Gaines. The marriage ended in divoce on February 10, 1978. Appellant moved into Lois Frawley's house one and one-half months after meeting her. Appellant and testatrix lived together until her death in November of 1980. Evidence of a common-law marriage consisted of appellant's testimony and testatrix's will. Appellant testified that in early December of 1977, he and testatrix began holding out as man and wife; they received vows in Mexico from a priest. Testatrix in her will refers to Edward Eugene Gaines as "my husband" four times.

By their second cross-point, appellees allege that appellant's pleadings and evidence raised the issue of the existence of a common-law marriage between appellant and the testatrix, the burden of which was on appellant to prove. Appellees contend that since appellant failed to submit the issue to the jury, it is deemed answered in favor of the jury verdict, and this court should so hold in the interest of justice and judicial economy. In effect, appellees assert that all relief not expressly granted is denied.

■ This is a will contest challenging the validity of testatrix's will on theories of testamentary capacity and undue influence. The formal relationship between testatrix and appellant is relevant to the issue of

whether or not the disposition was natural. Appellees argue since the jury found undue influence, it follows that the jury found no common-law marriage. This logic is not correct. It is equally possible that the jury believed the marriage existed, but the disposition was unnatural because testatrix's sons were excluded from the will. In other words, the finding of undue influence is not mutually exclusive with the existence of a marriage.

We do not find the marriage issue as an omitted issue is necessarily referable to a submitted ground of recovery or defense. *See* TEX.R.CIV.P. 279. Consequently, the marriage issue cannot be deemed as found by the court to support the judgment. Appellees' second cross-point is overruled.

By his first point of error, appellant complains that there is no evidence to support the jury's finding of undue influence. In the alternative, appellant challenges the factual sufficiency of the evidence.

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex. 1985); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding of the undue influence by the jury, the point must be overruled and the finding upheld. *In re King's Estate*, 244 S.W.2d at 661–62.

A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960).

Considering appellant's alternative pleading of factual insufficiency, an assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See id.*

■ The proof necessary in order to set aside the will on the grounds of undue influence is:

1) the existence and exertion of influence;

2) the effective operation of such influence so as to subvert or overpower the mind of the testatrix at the time of the execution of the testament; and

3) the execution of a will which the testatrix would not have executed but for such influence.

*Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex.1963); *Wood v. Stute*, 627 S.W.2d 539, 541 (Tex.App.—Fort Worth 1982, no writ). The jury charge in the instant case defined the requirements of "undue influence" using basically this same language.

"When undue influence is alleged as a ground for setting aside the probate of a will, the burden is upon the contestant to prove the allegation by a preponderance of the evidence." *Wood*, 627 S.W.2d at 541; *Estate of Woods*, 542 S.W.2d 845, 846 (Tex. 1976).

It is well settled that elements of undue influence may be proven by circumstantial evidence. *See Long v. Long*, 133 Tex. 96, 125 S.W.2d 1034, 1036 (1939); *Lowery v. Saunders*, 666 S.W.2d 226, 234 (Tex.App.— San Antonio 1984, writ ref'd n.r.e.). The

standard by which the evidence is measured is whether the circumstances point to the ultimate facts sought to be established with such degree of certainty as to make the conclusion reasonably probable. *Rothermel*, 369 S.W.2d at 922. *See also Estate of Murphy*, 694 S.W.2d 10, 12 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *Green v. Green*, 679 S.W.2d 640, 644 (Tex. App.—Houston [1st Dist.] 1984, no writ). All of the circumstances shown by the evidence should be considered; even though none of the circumstances standing alone would be sufficient to show undue influence, if when considered together they produce in the ordinary mind a reasonable belief that undue influence was exerted in the procurement of the will, they are sufficient to sustain this conclusion. *Barksdale v. Dobbins*, 141 S.W.2d 1035, 1038 (Tex.Civ. App.—Texarkana 1940, writ ref'd); *Lowery v. Saunders*, 666 S.W.2d at 234. However, the circumstances relied on must not be equally consistent with the absence of undue influence as with establishing undue influence. *Rothermel*, 369 S.W.2d at 922.

■ In establishing the existence of undue influence, we generally look to the nature and type of relationship existing between the testatrix, contestants and the accused party. *Rothermel*, 369 S.W.2d at 923. The establishment of undue influence is based on certain factors such as: the opportunities existing for exerting such influence; the circumstances surrounding the drafting and execution of the testament; the existence of a fraudulent motive; and whether the testatrix has been habitually subjected to the control of another. *Id.* The jury in the case at bar was instructed that they could consider these factors in determining the issue of undue influence.

The evidence in the present case established circumstances surrounding the execution of the will which would support the finding of undue influence. Testimony was given by the testatrix's attending physician, Dr. Sullivan, concerning her illness dating from September 14, 1972 to three months prior to her death. Mrs. Frawley contracted emphysema, and one of her lungs had been removed which led to bronchial pneumonia with bronchospasms. She later had problems with irregular heartbeats. In February, 1973, she began experiencing pain in her right shoulder and neck and was admitted to the hospital. In September of 1973 she was again admitted to the emergency room for difficulty in breathing. In June of 1977 she began losing her hair, and by spring of 1979 she was wearing a wig. Dr. Sullivan testified that on May 8, 1979, testatrix had a knot on the left side of her neck approximately ½ an inch in diameter. Later she experienced nausea, severe migraine headaches, loss of equilibrium and could not keep food down. This continued until the testatrix died four months later of cancer of the brain.

Dr. Sullivan's testimony showed continuing illness on the part of the testatrix. He testified that her illness could have had an effect upon the rationality of her thought processes and her personality. In addition, testatrix had lost weight between May of 1979 and August of 1980 which, in his expert opinion, was a significant amount for her age and height.

The children testified that testatrix's personality had changed after appellant moved into her home. She was no longer a headstrong woman, and was submissive to appellant. Evidence showed that testatrix withdrew from her children. Both appellant and testatrix were drinking heavily. She was seen drinking one-fifth of a gallon of Scotch per day, beginning in the morning.

Evidence was also presented showing appellant's seven prior marriages.

It is rarely possible to prove undue influence by direct testimony. Undue influence is usually a subtle thing, and by its very nature involves an extended course of dealings and circumstances. Usually a person charging undue influence must substantiate those charges by circumstances extending over a considerable length of time. *Long*, 125 S.W.2d at 1036; *Green*, 679 S.W.

2d at 644. The evidence presented supports the first requirement regarding the existence and exertion of influence over the testatrix.

Once competent evidence of the existence of appellant's influence is shown, the issue turns to whether it was effectually exercised to subvert or overpower the testatrix at the time of the execution of the will. This is generally based on whether the testatrix had the mental or physical capacity to resist influence or the susceptibility of the testatrix's mind as to the type and extent of the influence exerted. *Rothermel*, 369 S.W.2d at 923. This includes words and acts of the testatrix, weakness of the mind or body, whether this weakness was produced by age or disease; all these factors may be considered as a material circumstance in establishing the second element of undue influence. *Id.* at 923. *See also Curry v. Curry*, 153 Tex. 421, 270 S.W.2d 208, 210 (1954); *Long*, 125 S.W.2d at 1036.

A number of specific instances were given as evidence of undue influence asserted over the testatrix at the time of the execution of the will. In July of 1979, during a birthday party being held for appellant, testimony showed that his doberman pincher attacked a small child. Appellant "threw a fit" when the testatrix locked the animal in the house. Appellant, cursing obscenities and yelling at the testatrix in front of guests, berated her for fifteen to twenty minutes concerning his animal. Both had been drinking heavily.

Testimony showed that appellant kept a sawed-off shotgun by the side of his bed, and guns in both of his vehicles, all loaded. An employee who worked for appellant during the time of the execution of the will testified to appellant's hothead temper; arguments with customers led to altercations, with appellant stating that "he was going to bury them." This occurred two or three times each week. There was evidence of testatrix sneaking into her own home with groceries, in fear of appellant's anger.

A third episode occurred during the summer of 1979, prior to the execution of the will, when the family went to appellant's lake lot for the weekend. Appellant and testatrix intended to stay in a travel trailer, with testatrix's two sons and daughter-in-law renting a motel room. Appellant and testatrix were involved in a severe argument after which she left appellant and spent the night with her sons in the motel. The next day she returned to the lakeside acting as if nothing had occurred. This was a common occurrence following appellant's taking residence in her home.

In the Spring of 1979, testatrix's company wanted her to act in a training film for the company. Evidence showed she did not wish to make the film due to her health. Testatrix was tired and unwell at that time. An argument ensued between appellant and testatrix. She then changed her decision concerning the film, the evidence indicating because of fear of the appellant.

The evidence further showed that appellant's will was drafted at exactly the same time as testatrix's will, both being identical in disposition.

The evidence of testatrix's mental and physical incapacity and her susceptibility to appellant's influence was such that it supported the second requirement of *Rothermel;* i.e., that appellant exerted influence over her at the time of the execution of her will sufficient to subvert or overpower her mind. *See Folsom v. Folsom*, 601 S.W.2d 79, 81 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

The final question is whether the testament executed would not have been executed but for such influence. This issue is generally based on whether the will is unnatural in its disposition of property. *Rothermel*, 369 S.W.2d at 923; *Long*, 125 S.W.2d at 1036.

Lamont and Scott were Mrs. Frawley's sons by her previous marriage of 25–30 years; her husband died approximately five years prior to her meeting appellant. Scott lived in his parents' home until he was

twenty-one. Their family was close prior to his father's death. This continued afterwards with testatrix's children visiting almost daily. They all resided on the same property.

Lamont, his wife, Cathy, and their two children were also regular visitors. A brief period of time after appellant moved in with testatrix, Mrs. Frawley's family again began dropping in regularly, with Scott visiting almost every day. Lamont also saw his mother regularly; his family remained close to her. Lamont helped appellant clear his land at the lake, donating the equipment used, to repay his mother for a previous debt.

Testimony further showed that Cathy Frawley, Mrs. Frawley's daughter-in-law, had known Mrs. Frawley since she was eight years old, and that the testatrix was like a second mother. Cathy was closer to Mrs. Frawley than to her own mother. Cathy visited almost everyday; their homes were close. Mrs. Frawley's grandchildren were constantly visiting the testatrix with their parents.

After appellant moved into the testatrix's home, the relationship was more distant as she became weaker, but their previous relationship remained. Evidence showed it was Cathy who helped Mrs. Frawley sneak groceries into her home because testatrix was afraid of appellant's anger. The entire family was present at the birthday party for appellant. Throughout the time testatrix and appellant lived together, she constantly communicated with her family.

During the testatrix's first marriage, she and her husband owned a home. The home sat on 3.6 acres of land. The home and surrounding grounds had been completely remodeled. They also owned another parcel of land consisting of two burial plots, where the testatrix and the children's father are buried. The testatrix's will bequeathed these two pieces of property to appellant, and yet they are the only real property left of the children's father. Additionally, Mrs. Frawley's attorney testified that she specifically stated that she had not changed her name to appellant's.

The above circumstances considered with evidence of Mrs. Frawley being weakened and impaired, in addition to testimony showing her fear of appellant, is sufficient to justify a jury in determining her will was unnatural in its terms. The necessary elements of undue influence by appellant over testatrix are supported by tangible evidence. Appellant's point of error number one alleging "no evidence" and alternatively insufficient evidence is overruled.

By his second and third points of error, appellant alleges the trial court erred in excluding testimony of three of his witnesses and allowing the testimony of appellees' witness, all of whom had allegedly violated TEX.R.CIV.P. 267.

Rule 267 permits the trial court, at the request of either party in a civil case, to swear in and remove the witnesses from the courtroom so they cannot hear the testimony given by any other witness in the case. TEX.R.CIV.P. 267. The rule is discretionary, not mandatory. *Triton Oil & Gas Corporation v. E.W. Moran Drilling Co.*, 509 S.W.2d 678, 685 (Tex.Civ.App.— Fort Worth 1974, writ ref'd n.r.e.). The trial court's ruling will not be overturned unless it constitutes a manifest abuse of discretion. *See Holmes v. Holmes*, 588 S.W.2d 674, 676 (Tex.Civ.App.—Beaumont 1979, no writ).

An abuse of discretion is not shown by the fact that the excluded testimony is vital to one party's case, *Southwestern Bell Telephone Company v. Johnson*, 389 S.W.2d 645, 647–48 (Tex.1965), nor by the fact that the trial court decided a matter within its discretion in a manner different than the appellate court would have decided it. *See Southwestern Public Service Co. v. Vanderburg*, 581 S.W.2d 239, 247 (Tex.Civ. App.—Amarillo 1979, writ ref'd n.r.e.). In reviewing the issue, the appellate court may not substitute its own judgment for that exercised by the trial court, but must decide only whether the trial court's decision was arbitrary or unreasonable. *See Landry v. Travelers Insurance Company*, 458 S.W.2d 649, 651 (Tex.1970).

In applying the above principles to the case at bar, we cannot say that the trial court acted arbitrarily or unreasonably in refusing to admit the testimony of appellant's three witnesses. Although the first excluded witness, Billy R. Fields, was not instructed as to the rule being invoked, he conversed with one of appellant's other witnesses, Jim Wilson (the second excluded witness), and Cathy Frawley concerning the testatrix being an alcoholic. Appellant's third excluded witness, Coy Evans, spoke with both attorneys concerning his testimony, in appellant's presence. All of this follows in the wake of two previous trials. Considering these facts and circumstances, and the possibility of appellant's witnesses corroborating each other's testimony, we are not prepared to say the trial court abused its discretion.

We also find that the trial court correctly refused to strike the testimony of appellees' witness, Gladys Comp. Appellant was allowed to develop the circumstances surrounding the witness residing with appellees' family during trial, but did not take advantage of that opportunity. The selective use of sanctions follows from the basic rule that sanctions are not to be used to punish. *See Phillips v. Vinson Supply Co.,* 581 S.W.2d 789, 790 (Tex.Civ. App.—Houston [14th Dist.] 1979, no writ). The trial judge had the discretionary authority to permit the testimony or exclude it. Appellant has not demonstrated abuse of discretion in admitting such testimony. *See Weeks v. Heinrich,* 447 S.W.2d 688, 697 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n.r.e.). Appellant's second and third points of error are overruled.

By cross-point, appellees urges us to assess a ten percent penalty as damages pursuant to TEX.R.APP.P. 84, alleging the appeal was taken for delay and without sufficient cause.

The right of appellate review will not be penalized absent a showing that appellant had no reasonable ground to believe the judgment would be reversed. *See Farmer Foundation Co. v. Leach,* 680 S.W.2d 828, 831–33 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Rule 435 previously gave the appellate courts discretion in assessing damages for issues raised on an unsuccessful appeal which are contrary to well settled and established principles of law and where the appellee's circumstances are such that statutory interest on the judgment is not adequate compensation for delay. *See Rio Fresh, Inc. v. Consol. Produce Brokers,* 710 S.W.2d 174, 176 (Tex. App.—Corpus Christi 1986, no writ). This rule is now embodied in rule 82 of the Rules of Appellate Procedure with the provision for these additional damages being deleted from the new rule.

Rule 438 contained mandatory language to the effect that, if the court found the appeal was taken for delay, and there was no sufficient cause for taking the appeal, the defendant in the court below "shall pay ten percent on the amount in dispute as damages...." *See* TEX.R.CIV.P. 438. TEX.R.APP.P. 84 no longer contains this mandatory language nor the mandatory ten percent damages to be assessed, but otherwise contemplates the purposes for assessing damages in the same manner as the previous rule.

Appellees allege that the appellant appealed these matters to delay appellees' inheritance, stating that appellant would be precluded from claiming homestead due to failure to litigate this issue to the jury. This particular issue is not before the court and as such we will not address it. The question of undue influence has been raised by appellant, but the record does not indicate the appeal on this matter was taken for the sole purpose of delay. *LaChance v. Hollenbeck,* 695 S.W.2d 618, 622, (Tex.App.—Austin 1985, writ ref'd n.r. e.). The court must look at the case from the point of view of the advocate and determine whether he has reasonable grounds to believe that the case would be reversed. *See Beckham v. City Wide Air Conditioning Co.,* 695 S.W.2d 660, 663 (Tex.App.— Dallas 1985, writ ref'd n.r.e.). There are

over eight hundred pages in the statement of facts concentrating on the specific issue of undue influence. In addition, appellant received a judgment notwithstanding the verdict in the first trial, thus leading him to believe he might prevail on appeal.

Additionally, pointing out errors in appellant's brief inconsistent with the record will not suffice; there must be *no* sufficient cause for appeal and the appeal must have been taken *solely* for delay. *See State v. Buckner Const. Co.*, 704 S.W.2d 837, 849 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Appellees' first cross-point is overruled.

The judgment of the trial court is affirmed.