**In the ESTATE OF Angrous JERNIGAN, Deceased.**

**No. 6–90–004–CV.**

Court of Appeals of Texas, Texarkana.

July 3, 1990.

Jay S. Fichtner, Mankoff, Hill, Held & Goldburg, Dallas, for appellant.

J. Clay Gossett, Wilder, Wilder & Gossett, Henderson, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Harvie Jernigan appeals from a judgment in which the trial court admitted Angrous Jernigan's will to probate. Harvie contends that there is no evidence, or alternatively, insufficient evidence, to show that Angrous executed a valid will or that he had the requisite testamentary capacity to execute a will. Harvie also contends that the failure of the trial court to find that undue influence was exerted upon Angrous to obtain his signature on the purported will or that Angrous' signature on the will was a forgery is against the great weight and preponderance of the evidence. We affirm the judgment of the trial court.

■ Angrous Jernigan died February 22, 1989. Angrous had four children: Ladell Jernigan, Samuel B. Jernigan, Lorene Jernigan, and Billy Ray Jernigan. On February 24, 1989, Harvie Jernigan, a brother of Angrous, filed an application for letters of administration for the estate of Angrous. On March 6, 1989, Clifford Harkless, as the named independent executor, filed an application to have a will admitted to probate as the last will and testament of Angrous. The will provided the following distribution of the estate:

To the children of his son Samuel B. Jernigan, deceased:

| | |
|---|---|
| Adolphus | 1/12 |
| Christine | 1/12 |
| Anne | 1/12 |

To his son Ladell Jernigan, 1/4.

To his daughter Lorene Jernigan, 1/4.

To his son Billy Ray Jernigan, 1/4.

After hearing the contest filed by Harvie Jernigan, the trial court admitted the will to probate.

Harvie Jernigan contends that there is no evidence, or alternatively, insufficient evidence, that Angrous signed a valid will because the original will was never admitted into evidence during trial. Harkless offered the original will into evidence, but the trial court ruled that it was "carrying that along." A copy of the signed will had been admitted into evidence, but only as evidence that the drafting attorney, Darrell Hyatt, had prepared the will. Although not admitted into evidence, the trial court had the original will before it during the trial. Further, the trial court heard testimony from Hyatt, the two witnesses to the will, and the notary public who notarized the signatures to the will. The introduction into evidence of the original will is not necessary for the trial court to admit the will to probate. There is sufficient evidence to support the trial court's judgment.

■ Harvie also contends that the evidence is insufficient that Angrous had testamentary capacity to execute a will. Testamentary capacity means sufficient mental ability, at the time of the execution of the will, to understand the business in which the testator is engaged, the effect of his act in making the will, and the general nature and extent of his property. The testator must be able to know his next of kin and the natural objects of his bounty and have a sufficient memory to collect in his mind the elements of the business to be transacted and to hold them long enough to at least perceive their obvious relation to each other and to be able to form a reasonable judgment as to them. *Lowery v. Saunders*, 666 S.W.2d 226, 232 (Tex.App.–San Antonio 1984, writ ref'd n.r.e.). Hyatt testified that he drafted the will at the request of Algie Harkless, who was Angrous' son-in-law. After preparing the will, Hyatt met with Angrous and discussed the terms of the will with Angrous paragraph by paragraph, explaining to him the effects of the will. Angrous did not sign the will at the time Hyatt explained the terms of the will to him, but he signed it at a later date. Margie Centers and LaVerne Ross witnessed Angrous' signature. Both testified that they talked with Angrous before he signed the will, they saw Angrous sign his name to the will, it appeared that he knew what he was doing, and nobody was guiding him or exerting any type of influence over him when he executed the will. The notary public, Alpha Mooney, testified that she saw Angrous, Centers, and Ross

sign the will; Angrous indicated that he realized he was signing his will; Angrous appeared to be of sound mind; and there was nobody guiding him or directing him during the execution of his will. There is sufficient evidence that Angrous had testamentary capacity at the time he executed the will.

■■■ Harvie further contends that the trial court's failure to find that Algie Harkless and Lorene Harkless exerted undue and excessive influence on Angrous to obtain his signature on the will is against the great weight and preponderance of the evidence. In order to find undue influence, there must be (1) the existence and execution of an influence, (2) the effective operation of such an influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament, and (3) the execution of a testament which the maker would not have executed but for such influence. *Hirdler v. Boyd,* 702 S.W.2d 727, 730 (Tex.App.–San Antonio 1985, writ ref'd n.r.e.). The establishment of undue influence is based upon factors such as opportunities existing for such influence, circumstances surrounding drafting and execution of the testament, existence of fraudulent motive, and whether the testator has been habitually subjected to control of another. *Gaines v. Frawley,* 739 S.W.2d 950, 953 (Tex.App.–Fort Worth 1987, no writ). Algie Harkless approached Hyatt and dictated to him how the will was to be drafted. At the time the will was executed, Angrous was ninety years old and was dependent upon the Harklesses for daily assistance. However, Hyatt testified that he discussed the will thoroughly with Angrous and that he appeared to understand Hyatt's explanations. Although Algie Harkless was present when Angrous executed the will, Centers, Ross and Mooney all testified that Angrous appeared to know what he was doing, that he appeared to be signing the will under his own free will, and that he did not appear to be under the influence of anyone when he signed the will. While the Harklesses participated in the preparation of the will, they did not exert influence upon Angrous to get him to sign the will. The failure of the trial court to find that Angrous was under any undue influence when he executed his will is not against the great weight and preponderance of the evidence.

■■■ Harvie further contends that the trial court's failure to find that Angrous' signature on the will is a forgery is against the great weight and preponderance of the evidence. Harvie bases his contention upon the fact that Angrous had previously signed his name with a capital "A": the signature on the will used a lower case "a." A handwriting expert testified concerning Angrous' signature, but was unable to say that the signature on the will was not Angrous'. Further, Harkless entered into evidence other documents which bore Angrous' signature using the lower case "a," including Angrous' two previous drivers licenses and a division order witnessed by Hyatt. The trial court, when acting as the trier of fact, judges the credibility of the witnesses, assigns the weight to be given to the testimony, and resolves any conflicts or inconsistencies in the testimony. *Blackwood v. Tom Benson Chevrolet Co.,* 702 S.W.2d 732, 733 (Tex.App.–San Antonio 1985, no writ). The failure of the trial court to find that the signature of Angrous on his will was a forgery is not against the great weight and preponderance of the evidence.

The judgment of the trial court is affirmed.